IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY 1999 SESSION

FILED

June 2, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 03C01-9804-CC-00140 |
| Appellee, | ) | |
| | ) | Blount County |
| v. | ) | |
| | ) | Honorable D. Kelly Thomas, Jr., Judge |
| JAMES CLAY ROMINES, | ) | |
| | ) | (Probation Revocation) |
| Appellant. | ) | |

FOR THE APPELLANT:

Julie A. Martin
P. O. Box 426
Knoxville, TN  37901-0426
(On Appeal)

R. Mack Garner
District Public Defender
419 High Street
Maryville, TN  37804
(At Trial)

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

R. Stephen Jobe
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

Michael L. Flynn
District Attorney General
363 Court Street
Maryville, TN  37804-5906

Tammy M. Harrington
Assistant District Attorney General
363 Court Street
Maryville, TN  37804-5906

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

**O P I N I O N**

The defendant, James Clay Romines, appeals as of right from a ruling of the Blount County Criminal Court revoking his probation. The defendant presents one issue for appellate review:  whether the trial court erred by ordering the defendant to serve eleven days in jail as punishment for a second violation of probation.  After a review of the record, briefs of the parties, and appropriate law, the trial court's judgment is affirmed.

## FACTUAL BACKGROUND

The defendant's criminal dilemma began when he was indicted by the Blount County grand jury in 1995 for being an habitual motor vehicle offender.  On December 5, 1995, the defendant entered a plea of guilty for his violation of the Habitual Motor Offender Act.  The defendant agreed to a one-year sentence, as a standard offender, Class E felony, plus a fine of $500.  The defendant requested a sentencing hearing for alternative relief.  At the conclusion of the sentencing hearing on April 12, 1996, the trial court sentenced the defendant to one year with all but thirty days suspended, imposed a fine of $500, and placed the defendant on supervised probation for eleven months.  In the order of probation, the trial court imposed certain special conditions:  (1) a daily curfew, 10:00 p.m. to 6:00 a.m. at the defendant's residence; (2) the defendant must legitimate his child; (3) the defendant shall perform one hundred hours of community service at ten hours per month; and (4) the defendant is eligible for work release from jail.

The record reveals the trial court issued an arrest warrant on December 17, 1996 for violation of probation on the grounds that:  (1) the defendant moved from his residence without notifying his probation officer; (2) the defendant failed to pay probation fees of $180; (3) the defendant failed to pay court costs; (4) the defendant failed to legitimate his child; and (5) the defendant failed to perform community service work as directed by the court.

At the conclusion of a revocation hearing on March 7, 1997, the trial court revoked the defendant's probation.  The trial court's order of revocation reflects that the defendant was to serve seventy-two days and then be placed back on supervised probation for the

2

remainder of his sentence until November 30, 1997. Before release at the conclusion of the seventy-two days, the defendant was to have paid $500 on his fine and costs and have completed his community service. Also, the trial court permitted the defendant to be released every Sunday from jail to perform community service and certain weekends to comply with his National Guard duties. On July 11, 1997, the trial court ordered the defendant's release from jail with the balance of his sentence to be served on supervised probation and ordered him to legitimate his child. On November 5, 1997, the defendant's probation officer filed an affidavit for violation of probation, alleging the defendant failed to complete his community service by September 30, 1997, as ordered by the trial court, the defendant lost his job on September 29, 1997, and the defendant failed to report this matter to his probation officer. On March 30, 1998, the trial court revoked the defendant's probation.

## REVOCATION HEARING

Ms. Beverly Kerr, probation officer, testified the defendant began his probation supervision with her on March 12, 1996, after serving thirty days in the Blount County Jail. In December, 1996, Ms. Kerr requested a warrant for violation of probation on several grounds, mainly, that the defendant moved without notifying her and failed to complete community service work. After serving seventy-two days, the defendant was again placed on supervised probation on July 11, 1997. The defendant was ordered to complete his community service work by September 30, 1997, and to have his child legitimized. Upon release from jail, the defendant failed to report to Ms. Kerr until August 13, 1997. As of August 13, 1997, the defendant had not performed any community service work, lacking twenty-eight hours, forty-five minutes. Ms. Kerr next saw the defendant on September 23, 1997, when the defendant advised her he would take one day off from work and work one day on the weekends to complete his community service hours. The defendant also failed to produce proof of legitimization of his child. As of September 30, 1997, the date his community service work was to have been completed, the defendant still owed eleven hours and forty-five minutes. Ms. Kerr called the defendant's employer to contact the defendant and learned the defendant had lost his job on September 29, 1997. The

3

defendant did obtain another job shortly thereafter.  Ms. Kerr last saw the defendant on October 23, 1997, and became frustrated with the defendant over his lack of compliance with the court's order of probation.  As of March 30, 1998, the defendant still owed seven hours, forty-five minutes of community service work, but had legitimated his child and paid his fine and costs.

The defendant testified that he was single and had been supervised by Ms. Kerr since his release in 1996.  The defendant had no new arrests and denied any use of drugs or alcohol.  Regarding his employment, the defendant testified he was terminated from his employment at Stevenson Tire Company on September 29, 1997, over his community service work.  That same day, the defendant obtained employment with Neill-Sandler Ford, but returned to Stevenson Tire Company after six weeks.  The defendant conceded he still owed community service work, but had paid all his fines and court costs.  The defendant agreed he had not seen Ms. Kerr since October 23, 1997, believing his probation was over.

The trial court found uncontroverted evidence that the defendant violated the terms of his probation and revoked the same.  However, in a most generous moment, the trial court ordered the defendant to serve eleven days on consecutive weekends for the violation of probation and ordered that he be placed on **unsupervised probation** for one year upon completion of the eleven days.

## LEGAL ANALYSIS

Both the granting and revocation of a suspended sentence rest in the sound discretion of the trial court.  *State v. Mitchell,* 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that a defendant has violated the terms of probation.  Tenn. Code Ann. § 40-35-311(e).  The judgment of the trial court will not be disturbed on appeal, unless it appears that there has been an abuse of discretion.  For an appellate court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the

4

conclusion of the trial court that a violation of the conditions of probation has occurred. *State v. Harkins,* 811 S.W.2d 79, 82 (Tenn. 1991). The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision to revoke probation. *State v. Leach,* 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

The defendant concedes that he was "technically" in violation of his probation, and the trial court did not abuse its discretion in revoking probation. We agree. From our review of the evidence presented at the revocation hearing, we conclude that there is ample evidence to support the conclusion of the trial court that a violation of the conditions of probation had occurred.

Next, the defendant contends the trial court erred in not considering an alternative sentence. More specifically, the defendant complains the trial court was "unfair" in requiring him at the first revocation hearing in July, 1997, to pay his fine and costs and finish his community service work within two months of release from seventy-two days in jail. Thus, the defendant should not serve eleven days for violating probation terms upon his release. We are not impressed. First, upon release from jail in July, 1997, the defendant did not report to his probation officer, and it was the probation officer who contacted the defendant. Second, the defendant had done nothing towards completing his community service work. Third, it was the probation officer who discovered the defendant had lost his job. Fourth, as of the revocation hearing in March, 1998, the defendant still had not completed his community service work. The record, in essence, establishes the trial court did grant the defendant an alternative sentence by placing the defendant on **unsupervised probation** after serving eleven days. Had the trial court required the defendant to be incarcerated for the balance of his sentence, it would have been justified.

The trial court's judgment is affirmed.

5

_____

                                                      L. T. LAFFERTY, SENIOR JUDGE

CONCUR:



_____

JERRY L. SMITH, JUDGE



_____

THOMAS T. WOODALL, JUDGE